HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARDILLO ARNOLD, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, a foreign profit corporation; and JASON TYLER, an individual,<br><br>Defendants. | Case No. 3:24-cv-00221-RAJ<br><br>ORDER |

## I.   INTRODUCTION

THIS MATTER comes before the Court on Defendants' Motion for Reconsideration. Dkt. # 27. Defendants seek reconsideration of the Court's October 3, 2024 Order, Dkt. # 26, granting Plaintiff's Motion to Remand, Dkt. # 17, and denying as moot Defendants' Motion to Dismiss, Dkt. # 16. The Court has considered the Motion for Reconsideration, Plaintiff's Motion to Remand, Defendants' Motion to Dismiss, the submissions in support and in opposition of the motions, the balance of the record, and the applicable law. Plaintiff requested oral argument on his Motion to Remand, but the Court finds that oral argument is not necessary to resolve the motion. For the reasons set

ORDER - 1

forth below, the Court **GRANTS** Defendants' Motion for Reconsideration, **DENIES** Plaintiff's Motion to Remand, and **GRANTS** Defendants' Motion to Dismiss with leave to amend.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

#### 1.    General Allegations

Plaintiff is an employee of Marriott at its Westin Seattle location. Dkt. # 13 ¶ 3.3.[1] Plaintiff alleges that Marriott failed to provide Plaintiff and similarly situated individuals with compliant rest breaks, meal breaks, wages for "off-the-clock" work, sick leave, and reimbursement for cellphone usage. *Id* ¶ 4.  As a result, he asserts four causes of action for (1) failure to accrue and allow the use of paid sick leave in violation of the Washington Minimum Wage Act; (2) failure to pay wages owed in violation of Washington law; (3) unlawful failure to reimburse employee expenses; and (4) willful withholding of wages in violation of the Washington Wage Rebate Act. *Id.* ¶¶ 6–9.  Plaintiff proposes a class of "[a]ll hourly-paid or non-exempt employees of Defendants in Washington State" and a subclass who worked in Seattle, for a class period from November 1, 2020 through resolution of the case. *Id.* ¶¶ 5.1–5.2.

Washington law requires employers to provide employees with 10-minute rest breaks and 30-minute meal breaks at certain specified intervals. RCW 49.12; WAC 296-126-092.  Plaintiff alleges that Defendants "at times" failed to provide Plaintiff and putative class members with compliant rest breaks and meal breaks, and failed to provide compensation for missed breaks. *Id.* ¶¶ 4.4–4.8, 4.13–4.15.  Plaintiff alleges that Defendants "created and maintained work schedules and a working environment that

---

[1] The Court repeats allegations from the Amended Complaint for purposes of this background section only.  Defendants represent that Plaintiff is employed by WHC Payroll Company, a subsidiary of Marriott, rather than by Marriott itself. Dkt. # 1 ¶ 4.

discouraged" compliant rest and meal breaks, "failed to keep records" of rest periods, and "failed to establish and maintain a process" for reporting noncompliant rest and meal breaks. *Id.* ¶¶ 4.2, 4.3, 4.6, 4.11, 4.14. Plaintiff further alleges that "Defendants' staff interrupted Plaintiff's meal and rest breaks because Defendants did not have staff to backfill or float to accommodate [Plaintiff's] meal and rest breaks in contrast to the duties Marriott expected [him] to perform," and that on information and belief, this was a "policy and practice" common to all putative class members. *Id.* ¶ 4.17.

As for "off-the-clock" work, Plaintiff asserts a single allegation that "Defendants created work conditions that required Plaintiff and members of the putative class and the Seattle subclass to work outside of their scheduled shifts and not receive compensation before shifts started." *Id.* ¶ 4.16.

As for sick leave, Plaintiff alleges Defendants "failed to provide paid sick leave at a rate of at least one hour for every forty hours worked." *Id.* ¶ 4.21. Plaintiff further alleges that Defendants "fail[ed] to allow the usage of paid sick leave for qualifying absences." *Id.* ¶ 6.3.

Finally, as for reimbursements, Plaintiff alleges that Defendants required Plaintiff and putative class members to "use their personal cell phone to perform work on a regular basis" but did not provide reimbursement "for any costs associated with using personal cell phones." *Id.* ¶ 4.22–4.23.

**2.      Allegations Against Jason Tyler**

Plaintiff alleges all claims against both Marriott and Jason Tyler. *Id.* ¶¶ 6–9. Mr. Tyler is a Convention Services Manager at the Westin Seattle. *Id.* ¶ 3.2. Plaintiff alleges Mr. Tyler "exerciseed control over Plaintiff and putative class members" and "engaged in the [m]anaging of all events at the Westin Seattle, including managing the scheduling and payments, and exercising control over how Plaintiff and those similarly situated are

ORDER - 3

paid and the working conditions they are subjected to." *Id.* The Amended Complaint contains no other allegations specific to Mr. Tyler, and all remaining allegations are asserted against "Defendants." *See, e.g., id.* ¶¶ 6–9.

B.  **Procedural History**

Plaintiff filed this action in King County Superior Court. Dkt. # 1 at 33–48. On February 16, 2024, Marriott removed the action to this Court. Dkt. # 1. After removal, Plaintiff filed an Amended Complaint. Dkt. # 13. On March 14, 2024, Defendants filed a Motion to Dismiss, and on March 18, 2024, Plaintiff filed a Motion to Remand. Dkts. # 16, 17. On October 3, 2024, the Court issued an Order granting Plaintiff's Motion to Remand and denying as moot Defendants' Motion to Dismiss. Dkt. # 26. Defendants filed a Motion for Reconsideration of the Order, which Plaintiff opposed. Dkts. # 27, 33.

### III.  MOTION FOR RECONSIDERATION

A.  **Legal Standard**

Under Local Rule 7(h), motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of "manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." LCR 7(h)(1). Manifest error is very nearly synonymous with "clear error" under Ninth Circuit precedent. *Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (explaining that "[r]econsideration is appropriate" if the district court "committed clear error or the initial decision was manifestly unjust").

B.  **Discussion**

Defendants argue that the Court improperly applied complete diversity rather than the minimal diversity standard required by the Class Action Fairness Act ("CAFA").

ORDER - 4

Dkt. # 27 at 3. Plaintiff does not refute this point in his response, but instead raises other points in support of remand. *See generally* Dkt. # 33.

Upon review of the record, the Court's prior Order, and the applicable law, the Court agrees with Defendants that it erred in applying a complete diversity requirement for CAFA jurisdiction. Accordingly, the Court GRANTS Defendants' Motion for Reconsideration, and considers the remaining arguments set out in Plaintiff's Motion to Remand and Defendants' Motion to Dismiss.

### IV. MOTION FOR REMAND

**A.  Legal Standard**

Under CAFA, a defendant may remove a class action to federal court if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (d)(5)(B). In cases, as here, where the plaintiff challenges the defendant's asserted amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). "[N]o antiremoval presumption attends cases involving CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.* at 89.

To calculate the amount in controversy, "a removing defendant is permitted to rely on a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (quotes omitted). The defendant may base its assumptions on "the allegations of the complaint." *Id.* While the assumptions "cannot be pulled from thin air," *id.*, at this stage, a defendant is also not required to "comb through its records to identify and calculate the exact frequency of violations," *Lopez v. Aerotek, Inc.*, No. 14-803, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015).

B.  **Discussion**

Plaintiff does not challenge that the class size is over 100 members or that there is minimal diversity. *See* Dkt. # 17 at 6–14. Thus, the sole dispute is the amount in controversy. Plaintiff's Amended Complaint alleges the following categories of violations: failure to accrue and allow the use of paid sick leave; failure to provide compliant meal periods; failure to provide compliant rest periods; failure to pay for "off-the-clock" work; and failure to reimburse certain expenses. Dkt. # 13 ¶¶ 4, 6–8. In addition, Plaintiff seeks double damages under the Wage Rebate Act. *Id.* ¶ 9. Finally, Plaintiff seeks attorneys' fees and costs. *Id.* at 16. Marriott calculates the amount in controversy for Plaintiff's claims as follows:

| Claim | Estimated Amount in Controversy |
|---|---|
| Claim 1 – Sick Leave | $527,164.93 |
| Claim 2 – Meal Period | $2,695,335.10 |
| Claim 2 – Rest Period | $431,253.62 |
| Claim 2 – Off-the-Clock | $2,695,335.10 |
| Claim 3 – Expense Reimbursement | $579,840 |
| Claim 4 – Double Damages | $6,349,088.75 |
| Attorneys' Fees and Costs | $3,319,504.37 (using 25% calculation) |
| **Total** | $16,597,521.87 |

Dkt. # 1 ¶¶ 26–54; Dkt. # 23 at 16.

For purposes of this Motion to Remand, the Court will focus on only Marriott's calculation as to the meal period and rest period violations, plus double damages for those violations. Marriott estimates the amount in controversy is $2,695,335.10 for meal period violations and $431,253.62 for rest period violations, Dkt. 1 ¶¶ 37, 42, for a total

of $3,126,588.72. When doubled, the amount in controversy for those two categories is $6,253,177.44. Because this alone puts the amount in controversy over the $5 million threshold, no further analysis is required.

1. **Marriott's Calculations**

*Meal Period Violations*. Plaintiff alleges Defendants failed to provide Plaintiff and putative class members with 30-minute meal breaks as required by Washington law. Dkt. # 13 at ¶¶ 4.11–4.15. Marriott interprets Plaintiff's claim as seeking "damages in the form of payment for the unpaid 30-minute period and an extra 30 minutes of pay." Dkt. # 1 ¶ 35. Marriott determined that based on its records, "there are 2,058 members of the putative class, they worked approximately 127,741 workweeks during the relevant period, and their average hourly rate of pay is $21.10 during those workweeks." *Id.* ¶ 36; Dkt. # 24 ¶¶ 5–6. Based on an assumption that every employee experienced a meal period violation once per week, i.e., a 20% violation rate for a five-day workweek, Marriott calculated the amount in controversy for meal period violations as follows: 127,741 workweek x (($21.10 hourly rate x 30 minutes) + ($21.10 hourly rate x 30 minutes)) = **$2,695,335.10**. Dkt. # 1 ¶ 37.

Plaintiff does not dispute much of Marriott's calculation. He does not dispute that he seeks payment for the unpaid 30-minute period plus an extra 30 minutes of pay, and he does not dispute Marriott's representation of the number of putative class members, approximate workweeks in the class period, and the average hourly rate. *See* Dkt. # 17 at 9–11. Plaintiff only disputes Marriott's use of an assumed 20% violation rate across all workweeks. *Id.* Plaintiff argues that assuming a meal period violation "in *every* workweek for *every* putative class member is illogical." *Id.* at 9 (emphasis in original).

*Rest Break Violations*. Plaintiff also alleges Defendants failed to provide Plaintiff and putative class members with 10-minute rest breaks as required by Washington law.

Dkt. # 13 at ¶¶ 4.2–4.10. Based on the same workweek and hourly rate statistics discussed above, and assuming a 20% violation rate, Marriott calculated the amount in controversy for rest break violations as follows: 127,741 workweek x $21.10 hourly rate x 0.16 hours = **$431,253.62**. Dkt. # 1 ¶¶ 41–42. Plaintiff similarly only challenges Marriott's assumption of a 20% violation rate across all workweeks. *See* Dkt. # 17 at 9–11.

*Double Damages*. Plaintiff seeks double damages for willful withholding of wages. Dkt. # 13 ¶ 9. He does not dispute that he seeks double damages for the meal and rest period violations. Dkt. # 17 at 13. Taken together, the amount in controversy for Plaintiff's meal and rest period claims, including double damages, is as follows: 2 x ($2,695,335.10 for meal period claim + $431,253.62 for rest period claim) = **$6,253,177.44**.

        **2.**       **Reasonableness of 20% Violation Rate**

As explained above, the crux of the parties' dispute as to the amount in controversy for meal and rest break violations is the appropriate violation rate. The Court finds applying an assumed 20% violation rate is reasonable. Courts in the Ninth Circuit have repeatedly approved of an assumed 20% violation rate for meal and rest period claims where, as here, the plaintiff alleges a "policy and practice" of violations. *See, e.g.*, *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-719, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that an assumed 20-percent alleged violation rate for meal and rest period was reasonable where the plaintiff alleged a "pattern or practice" of violations); *Danielsson v. Blood Ctrs. of Pac.*, No. 19-cv-4592, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) ("Defendant's first assumption—a 20% violation rate for meal and rest breaks during the putative class period—is reasonable given the allegations of a 'pattern and practice' of such violations.").

Plaintiff argues a 20% violation rate is not reasonable in light of the Amended Complaint's language that these violations occurred "at times." Dkt. # 17 at 9. Like the cases above, however, Plaintiff also alleges a "policy and practice" of violations. Dkt. # 13 ¶ 4.17. Plaintiff cannot avoid federal jurisdiction by merely adding the words "at times" to his pleadings. In any case, violations occurring "at times" is consistent with an assumed once per week rate. Next, Plaintiff cites cases rejecting a 20% violation rate, but as Defendants point out, the cited cases predate the Supreme Court's decision in *Dart Cherokee*, which established that "no antiremoval presumption attends cases involving CAFA." 574 U.S. at 89. Finally, Plaintiff highlights two recent cases in which the removing defendants calculated the amount in controversy by reviewing their employee records and identifying more specific employee data than Marriott used in this case to calculate the amount in controversy. *See Terrell v. Samuel, Son & Co. (USA), Inc.*, No. 20-cv-587, 2020 WL 2797299, at *3 (C.D. Cal. May 29, 2020) (defendant offered evidence of the number of shifts that employees worked without a recorded meal period); *Jauregui v. Roadrunner Trans. Servs, Inc.*, No. 21-cv-4657, 2021 WL 4100286, at *4 (C.D. Cal. Sept. 8, 2021), *rev'd on other grounds*, 28 F.4th 989 (9th Cir. 2022) (defendant offered evidence of the number of shifts that qualified for meal breaks and rest breaks). Those cases only demonstrate that a removing defendant *may* use more specific data to support the violation rate used to calculate the amount in controversy. Requiring such evidence, however, is contrary to Ninth Circuit law. *See Perez v. Rose Hills Co.*, 131 F.4th 804, 808–10 (9th Cir. 2025) (holding district court erred by requiring evidence of violation rate).

In sum, the Court accepts Marriott's calculation for the amount in controversy related to meal and rest break violations. This amount alone, when doubled pursuant to Plaintiff's willful withholding of wages claim, exceeds the $5 million threshold for

establishing federal jurisdiction under CAFA. Marriott also provides calculations for other categories of damages, which although the Court does not address here, appear to place the total amount in controversy far in excess of $5 million. Dkt. # 1 ¶¶ 26–54; Dkt. # 23 at 16. The Court therefore DENIES Plaintiff's Motion to Remand.

## V. MOTION TO DISMISS

### A. Legal Standard

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the Court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). However, to survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quotes omitted). Although the Court must accept as true a complaint's well-pleaded facts, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

**B.      Discussion**

        **1.      Wage and Hour Claims**

The pleading standard for wage and hour claims is guided by *Landers v. Quality Communications Inc.*, 771 F.3d 638 (9th Cir. 2014).[2] In *Landers*, the Ninth Circuit held the plaintiff failed to plausibly allege minimum wage and overtime claims under the Fair Labor Standards Act. *Id.* at 645–46. The court found it was insufficient to present "generalized allegations" of violations, including that "defendants implemented a '*de facto* piecework no overtime' system" and "falsified payroll records to conceal their failure to pay required wages." *Id.* Instead, the plaintiff must plausibly allege "that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Id.* The court acknowledged that "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants," and therefore allegations with "mathematical precision" are not required. *Id.* Nevertheless, the plaintiff-employees "should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* The more specific the allegations, "the closer the complaint moves towards plausibility." *Id.*

Under the *Landers* standard, a wage and hour plaintiff does not state a plausible claim by merely repeating the applicable statutory language and stating the defendant violated the requirements. *See id.* at 644 ("we do not agree that conclusory allegations that merely recite the statutory language are adequate"); *Gonzalez v. ProBuild Co., LLC*, No. 22-315, 2022 WL 4596579, at *3 (C.D. Cal. July 7, 2022) ("Plaintiff must do more

---

[2] As noted in Defendants' reply brief, Dkt. # 22 at 2, Plaintiff's opposition contains citations to several cases that are no longer good law, and arguments that misstate the pleading standard for wage and hour cases. Counsel should be mindful of providing accurate statements of the law for consideration or defense of motions.

than parrot the language of California's employment statutes and allege that such statutes were consistently or regularly violated in order to survive a motion to dismiss under *Landers*.").

In contrast, courts in this circuit have found complaints sufficient if they identify a specific time or frequency where violations occurred, and some detail regarding the nature of the alleged violation. For example, in *McKinnon v. Peloton Interactive, Inc.*, No. 22-3368, 2023 WL 2628614 (C.D. Cal. Feb. 8, 2023), the court found a complaint sufficient to survive a motion to dismiss because the plaintiffs identified "specific pay periods where they were required to work unrecorded overtime off-the-clock, including during lunch breaks" and also provided "examples of tasks they were required to complete during meal breaks including being required to assist clients, communicate with other employees, and make deliveries." *Id.*, at *4; *see also Boon v. Canon Bus. Sols., Inc.*, 592 Fed. App'x 631, 632 (9th Cir. 2015) (holding complaint satisfied *Landers* because plaintiff "identified tasks for which he was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week.").

Here, the Amended Complaint does not satisfy the *Landers* requirement because it does not plausibly allege that Plaintiff experienced the alleged violations. Specifically, the Amended Complaint does not identify any specific instance, period or frequency where Plaintiff missed meal breaks, rest breaks, performed work off-the-clock, did not accrue sick leave, was denied sick leave, or was not reimbursed for cell phone expenses. It merely alleges that some of these violations occurred "at times." *See, e.g.*, Dkt. # 13 ¶¶ 4.4, 4.5. The Amended Complaint also does not provide any details regarding the violations. For example, unlike in *McKinnon*, Plaintiff does not identify any tasks he was required to perform during meal breaks or rest breaks. He likewise does not identify any tasks he performed off-the-clock, the circumstances of any instance where he requested

but was denied sick leave, or for what purpose he was required to use his personal cell phone without reimbursement. The Amended Complaint contains some allegations regarding Defendants' practices, such as that Defendants created schedules that discouraged compliant rest and meal breaks, interrupted meal and rest breaks, and failed to keep accurate records. *See, e.g.*, Dkt. # 13 ¶¶ 4.2, 4.3, 4.17. However, these are similar to the allegations regarding a "*de facto* piecework no overtime system" and "falsified payroll records" that the *Landers* court found was insufficient on its own to state a plausible claim for relief. *See Landers*, 771 F.3d at 646. In short, the Amended Complaint does not contain enough details to plausibly support an inference that Plaintiff experienced the various alleged violations. Accordingly, the Court DISMISSES Plaintiff's Amended Complaint.

### 2. Mr. Tyler's Liability

While the Court dismisses the Amended Complaint in its entirety for the reasons discussed above, it will briefly address Defendants' arguments as to Mr. Tyler's liability to provide guidance for any further amendments.

The Amended Complaint does not plausibly allege liability against Mr. Tyler under the Industrial Welfare Act, Minimum Wage Act, Wage Rebate Act, or Seattle Wage Theft Ordinance. The Amended Complaint contains only a single paragraph alleging that Mr. Tyler is the "Convention Services Manager" at Westin Seattle and "engaged in the [m]anaging of all events at the Westin Seattle, including managing the scheduling and payments, and exercising control over how Plaintiff and those similarly situated are paid and the working conditions they are subjected to." Dkt. # 13 ¶ 3.2. These allegations are conclusory and fail to support an inference that Mr. Tyler is an individual subject to liability under the applicable statutes. For example, the Amended Complaint provides no factually specific allegations about the ways in which Mr. Tyler

exercised control over Plaintiff's wages, or how Mr. Tyler was personally involved in the various alleged violations. The Court further agrees with Defendants that the Amended Complaint improperly lumps "Defendants" together without specifying which defendant is allegedly responsible for what wrongful conduct. *See Dodo Int'l Inc. v. Parker*, No. 20-1116, 2021 WL 4060402, at *8 (W.D. Wash. Sept. 7, 2021).

### 3.  Leave to Amend

The Court **GRANTS** Plaintiff's request for leave to amend because the deficiencies in the Amended Complaint may be cured with additional allegations. In addition to the deficiencies discussed above, Plaintiff acknowledges that a portion of his proposed class period fall outside the applicable statute of limitations. Dkt. # 21 at 2–3. Plaintiff must also address this deficiency in any subsequent amended complaint.

## VI.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Reconsideration and **VACATES** the October 3, 2024 Order, Dkt. 26, remanding this case to state court. Upon reconsideration, the Court **DENIES** Plaintiff's Motion to Remand and **GRANTS** Defendants' Motion to Dismiss with leave to amend within 21 days of the entry of this Order.

Dated this 11th day of July, 2025.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER - 14