HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARDILLO ARNOLD, individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

v.

MARRIOTT INTERNATIONAL, a foreign profit corporation, JASON TYLER, an individual,

Defendant.

CASE NO. 2:24-cv-00221-RAJ

ORDER

## I.    INTRODUCTION

THIS MATTER comes before the Court on Defendants Marriott International, Inc. ("Marriott") and Jason Tyler's (collectively, "Defendants") partial motion to dismiss Plaintiff Mardillo Arnold's second amended complaint. Dkt. # 41. The Court has reviewed the motion, the submissions in support of and in opposition to the motion, and the balance of the record. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## II.    BACKGROUND

Mr. Arnold is an employee of Marriott at its Westin Seattle location. Dkt. # 38 ¶ 3.3. He brings this putative class action against Marriott and Mr. Tyler, who is a convention

ORDER – 1

services manager at the Westin Seattle. *Id.* ¶ 3.2. Mr. Arnold alleges that Defendants failed to provide him and other similarly situated individuals with compliant rest breaks, meal breaks, wages for "off-the-clock" work, sick leave, and cell phone reimbursement. *Id.* ¶¶ 6.1–8.3. He further alleges that the alleged violations were willful. *Id.* ¶¶ 9.1–9.3.

The Court previously granted Defendants' motion to dismiss and dismissed Mr. Arnold's first amended complaint in its entirety with leave to amend. Dkt. # 36. Mr. Arnold then filed his second amended complaint. Dkt. # 38. Defendants admit that the second amended complaint plausibly states a claim as to the rest break, meal break, "off-the-clock" work, and sick leave violations. *See* Dkt. # 41 at 2. They maintain, however, that Mr. Arnold still fails to state a claim for (1) failure to provide cell phone reimbursement under the Seattle Wage Theft Ordinance, SMC 14.20.020; (2) willful withholding of wages under the Washington Wage Rebate Act, RCW 49.52.050 and .070; and (3) liability against Mr. Tyler. *Id.* Defendants move for partial dismissal of the second amended complaint on these grounds. *Id.*

**A.     Allegations Regarding Cell Phone Reimbursement**

Mr. Arnold alleges that he and putative class members used their personal cell phones for work on a regular basis without reimbursement. Dkt. # 38 ¶¶ 4.30–4.31, 8.1–8.3. For example, Mr. Arnold alleges that on January 24, 2024, he "received multiple work-related text messages from his manager on his personal cellphone" but was not reimbursed for his phone usage. *Id.* ¶ 4.9. Similarly, he alleges that on October 24, 2024, Mr. Tyler sent Mr. Arnold "several work-related text messages on Plaintiff's personal cell phone" but "neither Defendant Marriott nor Mr. Tyler reimbursed Plaintiff or similarly situated employees for the associated expenses." *Id.* ¶ 4.13. Mr. Arnold provides other examples of receiving work-related text messages, although the other allegations do not specify whether he received the messages on his personal cell phone, as opposed to, for example, an employer provided phone. *Id.* ¶¶ 4.7, 4.12.

ORDER – 2

**B.    Allegations Regarding Willful Withholding of Wages**

Next, in support of his willful withholding of wages claim, Mr. Arnold alleges that Defendants had knowledge of the alleged wage violations but failed to compensate him and putative class members. *Id.* ¶¶ 4.3, 4.10.  For example, he alleges that during the holiday seasons of 2021, 2022, and 2023, Mr. Tyler directed Mr. Arnold "to assist with conference and event setups at the Westin Seattle while Plaintiff and staff were not clocked in and at lunch." *Id.* ¶ 4.4.  He further alleges that Mr. Tyler "personally observed" Mr. Arnold and other class members performing pre-shift work on multiple occasions but failed to ensure they were paid for the time worked. *Id.* ¶ 4.5.  Further, Mr. Arnold alleges that on December 16, 2023, another supervisor directed him "to complete setup tasks despite knowing Plaintiff was on his lunch break," and refused Mr. Arnold's request for additional help. *Id.* ¶ 4.7.  On March 13, 2024, Mr. Arnold "made management aware" that his supervisor was directing him to perform work prior to his shift, but no changes were made. *Id.* ¶ 4.10.  Finally, on April 5, 2024, a supervisor texted Mr. Arnold regarding work-related matters during a lunch break. *Id.* ¶ 4.12.  Mr. Arnold asked if he would be paid for engaging in work-related texts during his lunch break, the supervisor said yes, but Mr. Arnold was not paid. *Id.*

Moreover, Mr. Arnold alleges that Marriott's policies and practices resulted in the wage violations.  For example, he alleges that Marriott "created and maintained work schedules and a working environment" that discouraged him and other putative class members from taking rest breaks. *Id.* ¶ 4.2.  He further alleges that Marriott "failed to maintain records showing the occurrence, timing, and duration of paid rest breaks" and "failed to establish and maintain a process" for employees to report rest break violations. *Id.* ¶¶ 4.7, 4.15.

**C.    Allegations Regarding Mr. Tyler**

Mr. Arnold asserts all claims against both Marriott and Mr. Tyler. *Id.* ¶¶ 6.1–9.3.  Mr. Tyler is a "Convention Services Manager at the Westin Seattle." *Id.* ¶ 3.2.  He is

ORDER – 3

engaged in managing "all events at the Westin Seattle, including managing the scheduling and payments, and exercising control over how Plaintiff and those similarly situated are paid and the working conditions they are subjected to." *Id.* As recounted above, the second amended complaint contains several examples of Mr. Tyler allegedly observing and directing Mr. Arnold and other class members to work during breaks and outside of scheduled shifts without compensation, and sending texts to their personal cell phones without reimbursement. *See, e.g., id.* ¶¶ 4.4, 4.5, 4.13.

## III.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

## IV.  DISCUSSION

### A.    Cell Phone Reimbursement

Mr. Arnold alleges that Defendants failed to reimburse him and putative class members for use of their personal cell phones for work-related matters, in violation of the Seattle Wage Theft Ordinance, SMC 14.20.020 ("SWTO"). Dkt. # 38 ¶¶ 4.30–4.31, 8.1–8.3. The SWTO requires employers to "pay all compensation owed to an employee by reason of employment on an established regular pay day at no longer than monthly payment intervals." SMC 14.20.020. "Compensation" includes, in relevant part, "reimbursement for employer expenses." *Id.* The parties agree there are no relevant cases interpreting the

ORDER – 4

SWTO.  Dkt. # 41 at 6; Dkt. # 42 at 15.  Both parties refer to a Seattle Office of Labor Standards Q&A[1] for guidance regarding the SWTO, as well as cases interpreting a similar California statute.  Dkt. # 41 at 6–7; Dkt. # 42 at 16–17.

Defendants argue Mr. Arnold's SWTO claim should be dismissed for two reasons. Dkt. # 41 at 6.  First, they argue Mr. Arnold fails to plead that he and putative class members were "required" to use their personal cellphones.  *Id.*  For example, he does not plead "there is a policy requiring use of personal cell phones, nor does he address whether employees were offered alternative methods of communication."  *Id.*  Second, Defendants argue Mr. Arnold fails to plead that he and putative class members "actually incurred any expense in connection with such calls or texts."  *Id.*  Specifically, he does not plead details regarding his phone plan or that he incurred charges "above and beyond his personal cellphone usage."  *Id.*  In response, Mr. Arnold argues he is not required to plead either issue under the SWTO.  Dkt. # 42 at 16.  The Court agrees with Mr. Arnold.

### i.    "Required" Use of Personal Cell Phone

The Seattle Office of Labor Standards Q&A makes clear that an employer need not necessarily "require" an employee to incur an expense to be liable for reimbursement.  The Q&A states reimbursable expenses are "those that are *reasonably necessary* to perform the employee's job duties or that foreseeably occurred because of an employer's instructions." Q&A at 21 (emphasis added).  It goes on to state that employers "must reimburse employees for the cost of items or services that are explicitly or implicitly necessary, *or* required by the employer, to carry out the employee's work duties."  *Id.* (emphasis added). Thus, the Q&A recognizes a distinction between an "implicitly necessary" expense and one "required by the employer."  Either may be subject to reimbursement.  The Q&A goes on to explain that "[w]hether an expense is reimbursable will depend on the particular situation."  *Id.*

---

[1] Seattle Office of Labor Standards, *Wage Theft Ordinance: Questions and Answers* (Sept. 19, 2025), available at: https://www.seattle.gov/laborstandards/ordinances/wage-theft ("Q&A").

ORDER – 5

Although not directly about cell phone expenses, the Q&A's discussion regarding telework is instructive. It states that "[w]hether an employer is required to reimburse expenses associated with 'optional' teleworking depends on whether teleworking and the associated costs were reasonably necessary to perform the employee's job duties." *Id.* at 21–22. Relevant considerations include "whether the employee was encouraged to work at home, whether the employer has provided sufficient space at its physical location for the employee to perform their work, how clearly the employer communicated that telework was voluntary, and whether other factors that benefit the employer made work at home necessary even though the overall telework policy was voluntary on its face." *Id.* Thus, even a facially "optional" expense could be subject to reimbursement.

Cases interpreting an analogous California statute further bolster the conclusion that whether expenses are reimbursable is a fact specific inquiry. The cases explain that "[a]scertaining whether an expense is 'necessary' 'depends on the reasonableness of the employee's choices.'" *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1077 (9th Cir. 2020) (quoting *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 568 (2007)).

Based on the above, the Court finds that to state a SWTO claim for reimbursement, Mr. Arnold need not plead that Defendants "required" him and putative class members to use their personal cell phones for work-related matters. Rather, the analysis turns on whether personal cell phone use was "reasonably necessary" under the circumstances, even if not explicitly required. Here, Mr. Arnold alleges that his supervisors texted him on his personal cell phone for work-related matters on several occasions. Dkt. # 38 ¶¶ 4.9, 4.13; *see also id.* ¶¶ 4.7, 4.12. A logical inference from these allegations is that it was reasonably necessary for Mr. Arnold and class members to use their personal cell phones to receive work assignments, instructions, or other necessary communications to perform their duties. While the ultimate question of whether these expenses were "reasonably necessary" is subject to additional discovery, Mr. Arnold alleges sufficient facts at this stage to survive a motion to dismiss.

ORDER – 6

### ii.    Actual Expenses Incurred

Next, the Seattle Office of Labor Standards Q&A clarifies that an employee need not incur actual expenses above and beyond the employee's personal phone plan to seek reimbursement. In the example of a teleworking employee, the Q&A states reimbursement can include "the portion" of the employee's "cell phone plan that would be reasonably required to perform work (based on some reasonable calculation)." Q&A at 21. Thus, if it is reasonably necessary for the employee to use a personal phone for work, the employee may seek reimbursement for a portion of the overall phone bill even if the employee did not specifically need to increase the cost of his or her phone plan for the work usage.

Cases interpreting the analogous California statute add further support. The California Court of Appeals addressed the issue of whether an employee must incur an actual expense beyond their personal phone plan to seek reimbursement, and held that employees are entitled to "a reasonable percentage of their cell phone bills" regardless of whether they "cell phone plans with unlimited minutes or limited minutes." *Cochran v. Schwan's Home Servs., Inc.*, 228 Cal. App. 4th 1137, 1140 (2014). It explained that "the details of the employee's cell phone plan do not factor into the liability analysis." *Id.* at 1144. Subsequent opinions have applied this finding in the federal pleading context and found plaintiffs need not allege details about their phone plans to survive a motion to dismiss. *See Dawson v. One Call Med., Inc.*, No. 20-cv-1188, 2021 WL 5513516, at *7 (S.D. Cal. Sept. 21, 2021) (holding that plaintiff need not allege facts about his "cell phone plan or whether he incurred additional charges for calls or cellular data *as a result* of work related usage.") (emphasis in original); *Lobo v. Air-India Ltd.*, No. 20-cv-8790, 2021 WL 254312, at *4 (N.D. Cal. Jan. 26, 2021) (rejecting argument that plaintiff must plead "what costs she incurred as a result of" employer's policy); *Batta v. YRC Inc.*, No. 20-02529, 2022 WL 18397381, at *3 (C.D. Cal. May 23, 2022) ("while [plaintiff] failed to allege the costs he incurred for using his personal cell phone, he alleged when the calls

ORDER – 7

occurred . . . and the nature of the calls, such that the Court can reasonably infer for purposes of this motion to dismiss, their general costs").

The cases Defendants cite are not persuasive. Defendants cite *Wright v. Frontier Management, LLC*, No. 19-cv-1767, 2021 WL 2210739 (E.D. Cal. June 1, 2021) for the proposition that an employee must allege an actual expense related to use of cell phones for work. Dkt. # 41 at 6. *Wright*, however, relies on a portion of an earlier opinion from *Krauss* that the *Krauss* court later acknowledged was incorrect. *See Krauss v. Wal-Mart, Inc.*, No. 19-cv-838, 2020 WL 1874072, at *6 (E.D. Cal. 2020) ("The Court previously found [allegations regarding cell phone reimbursement] failed because Plaintiff did not provide a 'single instance when such a cost was actually incurred and not reimbursed.' . . . In light of *Cochran*, the Court no longer finds Plaintiff needs to allege such an instance."). Defendants also cite *Herrera*. There, the Ninth Circuit found the plaintiff failed to state a reimbursement claim because she "failed to include specific, non-conclusory facts about how she made the calls or what costs she incurred." *Herrera*, 953 F.3d at 1078. The primary failure in *Herrera* was the lack of non-conclusory allegations about plaintiff's circumstances. The Court does not read *Herrera* to require a plaintiff to plead facts about personal phone plans. Such a reading would be directly contrary to *Cochran*, a case that *Herrera* cited with approval. *See id.*

In sum, the Court finds Mr. Arnold is not required to plead facts about his phone plan or that he incurred expenses above and beyond his personal phone usage to state a claim for cell phone reimbursement under the SWTO. Defendants' motion to dismiss Mr. Arnold's SWTO claim is denied.

**B.    Willful Withholding of Wages**

Next, Defendants argue Mr. Arnold fails to state a claim for willful withholding of wages under the Washington Wage Rebate Act ("WRA"), RCW 49.52.050 and .070, because he fails to allege Defendants had actual knowledge of the alleged wage violations. Dkt. # 41 at 7–10. The Court disagrees.

ORDER – 8

Under the WRA, an employer may be liable for double damages and attorneys' fees if it "willfully" withheld an employee's wages. RCW 49.52.050 and .070. The test for willfulness is not "stringent." *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371, 375 (Wash. 1998). It requires that "the employer's refusal to pay must be volitional." *Id.* In other words, "[w]illful means merely that the person knows what he is doing, intends to do what he is doing, and is a free agent" *Id.* (quoting *Brandt v. Impero*, 463 P.2d 197, 199 (Wash. Ct. App. 1969)) (quotation marks omitted). "Where an employer fails to pay wages owed, only two instances negate a finding of willfulness: (1) the employer was careless or erred in failing to pay or (2) a bona fide dispute existed between the employer and employee regarding the payment of wages." *Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 287 P.3d 516, 521 (Wash. 2012) (quoting *Morgan v. Kingen*, 210 P.3d 995, 998 (Wash. 2009)) (citation modified).

Federal courts have applied these principles in analyzing motions to dismiss under the federal pleading standard. In *Silver Fern Chemical, Inc. v. Lyons*, No. 23-cv-775, 2024 WL 3994345 (W.D. Wash. Aug. 29, 2024), the court held counterclaim plaintiffs sufficiently pleaded willfulness by alleging the existence of an implied contract entitling them to wages and "breach of that implied contract in [counterclaim defendants'] failure to pay the entirety of those wages." *Id.*, at *5. The court explained these allegations "depict volitional actions by [the counterclaim defendants] to withhold wages, not carelessness or a bona fide dispute regarding payment." *Id.* Similarly, in *Gaspar v. Turn Technologies Inc.*, No. 23-cv-1274, 2024 WL 1344854 (W.D. Wash. Mar. 29, 2024), the court held plaintiffs sufficiently pleaded willfulness by alleging "'Defendants willfully withheld wages' by 'failing to pay the stocks, bonus, and raise.'" *Id.*, at *2 (quotes omitted). These cases demonstrate the principle set out in *Schilling* that the test for willfulness is not "stringent."

The Court finds that Mr. Arnold sufficiently pleads willfulness under the WRA. The second amended complaint depicts volitional acts—that Marriott, through its

ORDER – 9

supervisors, caused Mr. Arnold and class members to miss rest breaks and meal breaks, work outside of scheduled shifts, and use their personal cell phones for work without compensation or reimbursement. *See, e.g.*, Dkt. # 38 ¶¶ 4.4, 4.5, 4.10, 4.12. Mr. Arnold further alleges that on multiple occasions, he raised the issue to his supervisors but no changes were made. *Id.* ¶¶ 4.10, 4.12. Finally, he alleges that the violations were a result of Marriott's policies, practices, and work culture. Dkt. # 38 ¶¶ 4.2, 4.7, 4.15. These allegations are sufficient to state a claim for willful withholding of wages.

Defendants' arguments to the contrary are not persuasive. First, Defendants argue that Mr. Arnold's allegations are conclusory and cite federal cases dismissing WRA claims based on conclusory allegations. Dkt. # 41 at 8. As discussed above, however, Mr. Arnold's allegations are more than mere recitations of the elements of willful withholding of wages and are sufficient to survive a motion to dismiss. Second, Defendants argue cases like *Gaspar* are distinguishable because they involved "lump sum payments to individuals in situations in which the employer's knowledge of nonpayment was obvious." Dkt. # 43 at 6. A consequence of Defendants' reasoning, however, is that it will be easier for plaintiffs to plead willfulness in cases involving a single plaintiff and discrete payments than in cases involving large-scale and systematic withholding of wages. The Court declines to apply this distinction. Finally, to the extent that Defendants suggest any alleged withholding may have been the result carelessness or error, this is a factual dispute subject to discovery.

For these reasons, Defendants' motion to dismiss Mr. Arnold's willful withholding of wages claim is denied.

**C.    Claims Against Mr. Tyler**

Lastly, Defendants argue that all claims against Mr. Tyler should be dismissed because he is not subject to individual liability under the relevant statutes and ordinance. Dkt. # 41 at 11–15. The Court agrees.

ORDER – 10

Mr. Arnold brings claims under four statutes and ordinances:  (1) the Minimum Wage Act ("MWA"), RCW 49.46; (2) the Industrial Welfare Act ("IWA"), RCW 49.12; the (3) the SWTO; and (4) the WRA.  Because each statute or ordinance contains a different formulation for imposing individual liability, the Court must analyze Mr. Tyler's liability under each one.  The common theme in dismissing all claims, however, is that Mr. Tyler is the manager of a single function (convention services) at a single Marriott location.  Mr. Arnold fails to plead that Mr. Tyler exercised sufficient control to incur personal liability for the alleged wage violations in this case.

i.    **MWA**

Only an "employer" may be held liable under the MWA.  RCW 49.46.090.  "'Employer' includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee."  RCW 49.46.010(5).

"[I]nterpretations of comparable provisions of the [Fair Labor Standard Act ('FLSA')] are persuasive authority when construing the MWA." *Ramirez v. Precision Drywall, Inc.*, 2011 WL 5147660, at *7 (Wash. Ct. App. Oct. 31, 2011).  Here, the definitions of "employer" under the MWA and FLSA are "substantially identical."  *Id.* Thus, the Court will look to cases interpreting the definition of "employer" under the FLSA for guidance.

When determining whether an individual is an "employer" under the FLSA, courts look to the "economic reality" of the relationship. *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009).  "Where an individual exercises 'control over the nature and structure of the employer relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability."  *Id.* (quoting *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999)).  In *Lambert*, the Ninth Circuit affirmed a jury instruction that individuals may be liable under the FLSA only if they have "significant ownership interest with operational control of significant aspects of the

ORDER – 11

corporation's day-to-day functions; the power to hire and fire employees; the power to determine salaries; and the responsibility to maintain employment records." *Lambert*, 180 F.3d at 1012 (citation modified).

Significantly, "[s]tatus as a supervisor and execution of certain duties attendant to that status, e.g. scheduling shifts, collection of hours, distribution of paychecks, recommendations regarding raises, and instruction, are not enough, without more, to make the supervisor an 'employer' for purposes of the FLSA." *Pineda-Marin v. Classic Painting Inc.*, No. 08-cv-798, 2010 WL 1257616, at *11 (D. Or. Mar. 25, 2010). Multiple cases support the conclusion that "supervisors are considered 'employers' under the FLSA only when they exercise something more than common employee supervision." *Id.* (collecting cases).

The Court finds that Mr. Tyler is merely a supervisor rather than an "employer" subject to liability under the MWA. His duties, including "managing the scheduling and payments" of employees, Dkt. # 38 ¶ 3.2, are part of his role as supervisor of a single function at a single Marriott location. Nothing in the second amended complaint suggests that Mr. Tyler has the level of economic and operational control to give rise to liability under the MWA.

### ii.   IWA

Under the IWA, liability also attaches to "employers," defined as "any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and employs one or more employees." RCW 49.12.005(3)(b). An individual may be liable under the IWA if the individual "engages in business and employs employees." *Ramirez*, 2011 WL 5147660, at *5. In *Ramirez*, the court found that the individual defendants, who were the sole owners of the corporate defendant, could not be liable under the IWA because it was the "corporate entity," not the individual defendants, that engaged in business and employed employees. *Id.* Here, again, Mr. Tyler is a supervisor of a single function at a

ORDER – 12

single Marriott location. He does not engage in business or employ anyone, and thus cannot be liable under the IWA.

### iii.    SWTO

The SWTO similarly applies to "employers," defined as "any individual, partnership, association, corporation, business trust, or any entity, person or group of persons, or a successor thereof, that employs another person and includes any such entity or person acting directly or indirectly in the interest of an employer in relation to an employee." SMC 14.20.010. The Seattle Office of Labor Standards Q&A states an "individual may also be a joint employer." Q&A at 6. Similar to the FLSA and MWA, whether an individual is an employer under the SWTO requires application of an "economic realities test." *Id.* The "five primary factors" are: (1) the nature and degree of control of the workers; (2) the degree of supervision (direct or indirect) of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right (directly or indirectly) to hire, fire, or modify the employment conditions of the workers; and (5) preparation of payroll and payment of wages." *Id.*

Applying these factors, the Court finds that Mr. Tyler is also not an "employer" under the SWTO. His control and supervision of employees is limited to his role as a supervisor; he is not alleged to determine pay rates or methods of pay; he is not alleged to have the power to hire, fire, or modify employment conditions; and he is not alleged to prepare payroll or payment of wages. Again, nothing in the second amended complaint suggests Mr. Tyler has the level of economic and operational control that could fairly subject him to individual liability in this case.

### iv.    WRA

Finally, the WRA imposes liability on an "employer or officer, vice principal or agent of any employer." RCW 49.52.050. The Washington Supreme Court has held that "low-level managers and supervisors" are exempt from liability under the WRA. *Allen v.*

ORDER – 13

*Dameron*, 389 P.3d 487, 493–94 (Wash. 2017) (discussing *Ellerman v. Centerpoint Prepress, Inc.*, 22 P.3d 795 (2001)).  Thus, Mr. Tyler also cannot be liable under the WRA.

Accordingly, Defendants' motion to dismiss all claims against Mr. Tyler is granted.

### v.    Leave to Amend

The Court already put Mr. Arnold on notice that the allegations in his first amended complaint against Mr. Tyler were deficient, and gave Mr. Arnold an opportunity to amend. Dkt. # 36 at 13–14.  Based on the analysis above, the Court finds the deficiencies in the second amended complaint against Mr. Tyler cannot be cured through further amendment. Accordingly, leave to amend is denied.

## V.   CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' partial motion to dismiss, Dkt. # 41, as follows:

(1) All claims in the second amended complaint against Defendant Jason Tyler are **DISMISSED WITH PREJUDICE**.

(2) The remainder of Defendants' motion is **DENIED**.

Dated this 2nd day of March, 2026.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 14